## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| J.A. CASTRO | ) | |
| Plaintiffs, | ) | |
| | ) | |
| *v.* | ) | Case No. 4:23-cv-613-P |
| | ) | |
| DONALD JOHN TRUMP, DONALD J. | ) | |
| TRUMP FOR PRESIDENT 2024, INC., | ) | Jury Trial Demanded |
| MAKE AMERICA GREAT AGAIN INC., | ) | |
| MAKE AMERICA GREAT AGAIN PAC, | ) | |
| TRUMP SAVE AMERICA JOINT | ) | |
| FUNDRAISING COMMITTEE *and* JOHN | ) | |
| DOE 1 (*a.k.a.* "CHETSFORD"), | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED OBJECTIONS TO U.S. MAGISTRATE'S FINDINGS,

## CONCLUSIONS, AND RECOMMENDATIONS

Plaintiff, J.A. CASTRO (herein "Plaintiff), *pro se*, pursuant to 28 U.S.C. § 636(b), respectfully files this objection to the U.S. Magistrate's findings, conclusions, and recommendations.

## I. VEXATIOUS LITIGANT FINDING

The Fifth Circuit has held that district courts have authority to enjoin vexatious litigants pursuant to 28 U.S.C. § 1651, also known as the *All Writs Act*.[1]

The Fifth Circuit has held that when a court demonstrates a "pattern of harassment" based on clearly articulated findings of "bad faith conduct" to reveal "true motives," it may impose a sanction in the form of an injunction requiring the litigant to seek permission from the court prior

---

[1] *See Newby v. Enron Corp*., 302 F.3d 295, 302 (5th Cir. 2002).  It is Plaintiff's position that this sanction is extremely rare and reserved only for the most egregious conduct as a means of last resort when no other sanction suffices to deter an abusive and harassing litigant who beings factually or legally baseless claims.

1

to any future filings.[2]  This has become known as a "vexatious litigant" pre-filing injunction sanction.

## A. STANDARD OF REVIEW

The U.S. Court of Appeals for the Fifth Circuit has held that when considering whether to enjoin future filings, a court must consider the circumstances of the cases, including four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions.[3]

### 1. Plaintiff's History of Litigation with Good Faith Basis

Although the Fifth Circuit identified the history of litigation and good faith basis as two separate factors, they are logically intertwined and should be addressed simultaneously along with the factual circumstances of the cases.  It is Plaintiff's position that his past civil actions were not with the abusive intent to harass because they had good faith factual and legal basis.  Establishing good faith logically negates a finding of an abusive intent to harass (*i.e.*, vexatiousness).  Hence, the factors are simultaneously addressed below in separate subsections covering various sets of the cases cited by the U.S. Magistrate.

#### a. The Four 2018 Cases Filed Within Three Weeks of Each Other

In 2018, Plaintiff filed four civil actions; all within three weeks of one another: three for defamation and one for a civil rights violation.  At that time, Plaintiff's tax practice was rapidly growing faster than he could manage; much to the ire of a former employer, former client, economic competitor, and a law school dean.

---

[2] *Matter of Carroll*, 850 F.3d 811, 813 (5th Cir. 2017).
[3] *See Baum v. Blue Moon Ventures*, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (quoting *Cromer v. Kraft Foods N. Am., Inc*., 390 F.3d 812, 818 (4th Cir. 2004)).

In *Castro v. Campbell*, a former client had defamed Plaintiff.  To redress this legitimate grievance and preserve his reputation, Plaintiff brought a civil action in federal court.  Plaintiff believed that the Court would have personal jurisdiction over a defendant that knowingly slandered a Texas resident.  The Court ultimately concluded that Plaintiff brought the case in the wrong venue and transferred the case to the Eastern District of Michigan.  As this Court knows, if the case was ultimately settled, Plaintiff would be unable to confirm or deny the existence of a settlement agreement without risking breach of contract for violating confidentiality. Nevertheless, Plaintiff can confirm that no court ever determined that the claims in the case were factually or legally baseless, intended to harass, or brought in bad faith.  Moreover, the Magistrate Judge did not allege that this *Campbell* case was factually or legally baseless, intended to harass, or brought in bad faith.  To the contrary, it was well grounded in both fact and law.  As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is both unwarranted and deprives Plaintiff of fair notice to adequately respond.

In *Castro v. Berg*, an economic competitor had contacted clients of Plaintiff to defame his reputation and filed a false complaint with the Texas State Bar.  To redress this legitimate grievance and preserve his reputation as well as to retain the business of his clients, Plaintiff brought a civil action in federal court.  Plaintiff believed that the Court would have personal jurisdiction over a defendant that knowingly slandered a Texas resident and filed a false complaint in Texas.  The Court ultimately concluded that it lacked personal jurisdiction over the defendants. Like *Campbell*, it was an issue of venue.  As this Court knows, if the case was ultimately settled, Plaintiff would be unable to confirm or deny the existence of a settlement agreement without risking breach of contract for violating confidentiality.  Nevertheless, Plaintiff can confirm that no court ever determined that the claims in the case were factually or legally baseless, intended to harass, or brought in bad faith.  Additionally, Plaintiff can confirm the fact that Roy Berg is no

3

longer employed by Moodys Gartner.  Moreover, the Magistrate Judge did not allege that this *Berg* case was factually or legally baseless, intended to harass, or brought in bad faith.  To the contrary, it was well grounded in both fact and law.  As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is both unwarranted and deprives Plaintiff of fair notice to adequately respond.

In *Castro v. Gudorf*, a former employer had defamed Plaintiff at a marketing event that Plaintiff had spent thousands of dollars to sponsor.  To redress this legitimate grievance and preserve his reputation, Plaintiff brought a civil action in federal court.  Plaintiff believed that the Court would have personal jurisdiction over a defendant that knowingly slandered a Texas resident.  The Court concluded that Plaintiff brought the case in the wrong venue and transferred the case to the Southern District of Ohio.  As this Court knows, if the case was ultimately settled, Plaintiff would be unable to confirm or deny the existence of a settlement agreement without risking breach of contract for violating confidentiality.  Nevertheless, Plaintiff can confirm that no court ever determined that the claims in the case were factually or legally baseless, intended to harass, or brought in bad faith.  Moreover, the Magistrate Judge did not allege that this *Gudorf* case was factually or legally baseless, intended to harass, or brought in bad faith.  To the contrary, it was well grounded in both fact and law.  As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is both unwarranted and deprives Plaintiff of fair notice to adequately respond.

In *Castro v. Georgetown*, Plaintiff's alma mater unjustifiably banned him from participating in the law school's hiring program, which Plaintiff felt was retaliation for this outspoken conservative political views and ethnic background while attending Georgetown Law. To redress this legitimate grievance regarding his civil rights, Plaintiff brought a civil action in federal court.  Plaintiff believed that the Court would have personal jurisdiction over a defendant

that knowingly violated the civil rights of a Texas resident. The Court ultimately concluded that it lacked personal jurisdiction over the university. It too was an issue of venue; the case should have been filed in the U.S. District Court for the District of Columbia where the university was and still is located. As this Court knows, if the case was ultimately settled, Plaintiff would be unable to confirm or deny the existence of a settlement agreement without risking breach of contract for violating confidentiality. Nevertheless, Plaintiff can confirm that no court ever determined that the claims in the case were factually or legally baseless, intended to harass, or brought in bad faith. Additionally, Plaintiff can confirm that he was invited to participate in the hiring program by NYU that now runs the program in conjunction with Georgetown. Moreover, the Magistrate Judge did not allege that this *Georgetown* case was factually or legally baseless, intended to harass, or brought in bad faith. To the contrary, it was well grounded in both fact and law. As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is both unwarranted and deprives Plaintiff of fair notice to adequately respond.

The *Campbell*, *Berg*, *Gudorf*, and *Georgetown* cases were all filed within three weeks of each other in 2018, and Plaintiff ultimately learned a hard legal lesson in personal jurisdiction and venue.

These four cases do not demonstrate vexatiousness; they demonstrate an American citizen who utilized the federal judiciary to promote civilized behavior while not fully understanding the limits of the Texas Long-Arm Statute. Defamation can be immensely damaging to a professional career if not addressed in a civilized forum in the form of a civil action. It is becoming all too common for American citizens to make baseless accusations against one another; sometimes reaching the point of fantastical obscenity. Civil actions for defamation remind the public to keep their accusations factually supported. Civil actions for defamation promote civilized discourse. If being a diligent litigant intent on preserving his reputations risk being labeled a vexatious litigant,

5

the chilling effect will be immeasurable, and we will witness the slow and guaranteed demise of civil discourse in this nation; more than we are already witnessing.

The U.S. Magistrate has provided no explanation or evidence of bad faith or an intent to harass other than a factually unsupported assertion that the frequency of litigation *alone* warrants a finding of vexatiousness. Successful entrepreneurs and public figures are lightning rods for defamation. Diligently and zealously defending one's reputation is not vexatious.

### b. *The 2021 Congressional Race Case*

In *Castro v. City of Grand Prairie*, a handful of Plaintiff's campaign signs had been mistakenly placed by campaign staff in areas that violated local law.[4] In response, the city of Grand Prairie had threatened to remove *all* of Plaintiff's campaign signs in the city even if they were on private property with the consent of the land or home owner and fully compliant with local law. In response, Plaintiff filed a civil action in federal court along with a request for a temporary restraining order. On April 16, 2021, the Court set a hearing in the Fort Worth Division for April 19, 2021, for 1:30pm.[5] On April 19, 2021, Plaintiff appeared at the Fort Worth division for the hearing, but that same morning, unbeknownst to Plaintiff, the Court ordered the case transferred to Dallas without notice to Plaintiff. That same day, with no constitutionally sufficient notice to Plaintiff, the Court held an *ex parte* hearing and issued a Memorandum Opinion denying injunctive relief; all with zero participation from Plaintiff. To this day, Plaintiff is still perplexed by what occurred.

The following day, the city of Grand Prairie clarified to Plaintiff their intent to only remove campaign signs that were on public property but provided Plaintiff with the opportunity to move

---

[4] For example, one business owner gave campaign staff permission to place a sign on the side lawn of his business. The campaign staff, however, placed the sign in between the sidewalk and the street, which they were unaware was considered public property. The city mistakenly thought the sign was simply placed their for no reason. However, there were other examples of campaign signs being placed on public property without any authorization, but those were only a few.
[5] *See* Case No. 3:21-cv-885, ECF 3.

them onto private property.  As such, the issue was amicably resolved.  Two weeks later, the special election took place on May 1, 2021, which thereby mooted the case.  Plaintiff forgot to dismiss the case, which languished on the docket until it was *sua sponte* dismissed in October of that year.

No court ever determined that the claims in the *City of Grand Prairie* case were factually or legally baseless, intended to harass, or brought in bad faith.  Moreover, the Magistrate Judge did not allege that this *City of Grand Prairie* case was factually or legally baseless, intended to harass, or brought in bad faith.  To the contrary, it is well grounded in both fact and law.  As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is unwarranted.  And if the Court were inclined to find an implied argument, Plaintiff was not given adequate notice and opportunity to respond.

### *c. The IRS Cases*

In *Castro v. United States of America*, Plaintiff accused IRS Special Agent Tuan Ma of violating 26 U.S.C. § 6103 on two separate occasions.  Plaintiff had secured sworn affidavits from two individuals confirming that IRS Special Agent Tuan Ma had unnecessarily disclosed to them that Plaintiff was under criminal investigation by the Internal Revenue Service.  The Court in that case concluded that if such a statement were made, it would be in violation of taxpayer privacy rights under 26 U.S.C. § 6103 but that the good faith exception to disclosure under 26 U.S.C. § 7431(b)(1) could apply if the disclosure was the result of a "good faith, but erroneous, interpretation of section 6103."  For that reason, the Court denied the government's motion to dismiss and permitted the case to proceed to the discovery phase.

The problem for the government in that case was that IRS Special Agent Tuan Ma had also submitted a sworn statement, under penalty of perjury, stating that he had ***not*** disclosed that Plaintiff has under criminal investigation.  This put the government in an awkward position.  How

could the government argue good faith misinterpretation of law if the agent was denying making the statement to begin with?

To circumvent this, the government made a contingent factual assertion in a motion for summary judgment that IRS Special Agent Tuan Ma did, in fact, make the statement despite swearing under oath that he did not. Plaintiff objected to this procedural tactic and advised the court of the irony of the government admitting to criminal perjury in order to establish good faith. Plaintiff also explained that if the court were to accept the contingent factual assertion, it would arguably transform into a judicial admission requiring IRS Special Agent Tuan Ma's criminal prosecution for perjury. The court in that case ultimately disagreed and granted summary judgment, which Plaintiff appealed to the Fifth Circuit. The Fifth Circuit ultimately affirmed the lower court's decision without analysis. Because another federal circuit court of appeals had applied the good faith exception in a manner that would have denied its application to IRS Special Agent Tuan Ma, there was clearly a circuit split warranting a Writ of Certiorari to the U.S. Supreme Court. Plaintiff motioned for a stay of the mandate while he prepared his Writ of Certiorari to the U.S. Supreme Court. The Fifth Circuit denied the motion. Plaintiff is still in the process of preparing the Writ of Certiorari.

No court ever determined that the claim in this case were factually or legally baseless, intended to harass, or brought in bad faith. Moreover, the Magistrate Judge did not allege that this *United States of America* case was factually or legally baseless, intended to harass, or brought in bad faith. To the contrary, it is well grounded in fact and law that another U.S. Court of Appeals has agreed with. As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is wholly unwarranted and utterly shocking since the case is not yet fully settled.

In *Castro v. Internal Revenue Service*, while the prior *United States of America* case was

8

pending, IRS Special Agent Tuan Ma retaliated against Plaintiff for filing the civil action regarding the 26 U.S.C. § 6103 violations by revoking Plaintiff's Electronic Filing Identification Number (EFIN), which is the only manner by which to file federal income tax returns with the Internal Revenue Service.  In effect, revoking a firm's EFIN shuts down the tax preparation company; it's a tax preparer death sentence.  In response, Plaintiff filed a civil action arguing that, pursuant to *Loving v. IRS*,[6] the Internal Revenue Service actually had no authority to regulate Electronic Return Originators, which would invalidate the regulations that Treasury promulgated purporting to have that authority.  Because the U.S. Court of Appeals for the D.C. Circuit had already shocked the IRS by previously invalidating their regulations purporting to have the authority to regulate tax return preparers, Plaintiff as well as the government knew that the Fifth Circuit would defer to that ruling.  Plaintiff motioned for injunctive relief, which was denied, and immediately thereafter emergency appealed to the Fifth Circuit.  Upon the Fifth Circuit accepting the emergency appeal, the tax division of the U.S. Department of Justice agreed to reinstate Plaintiff's EFIN.  The case was settled in Plaintiff's favor.

No court ever determined that the claim in this case were factually or legally baseless, intended to harass, or brought in bad faith.  Moreover, the Magistrate Judge did not allege that this *Internal Revenue Service* case was factually or legally baseless, intended to harass, or brought in bad faith.  To the contrary, it is well grounded in fact and law and settled in Plaintiff's favor.  As such, the Magistrate's reliance on this case, without any explanation or evidence of bad faith, is wholly unwarranted.

The U.S. Magistrate's reliance on this case, which actually resulted in a settlement in Plaintiff's favor, highlights the rush to judgment for a finding of vexatiousness and raises legitimate concerns regarding the true motive in seeking such a drastic sanction.

---

[6] Loving v. I.R.S., 742 F.3d 1013 (D.C. Cir. 2014).

### d. *The Bivens Conspiracy Case*

In *Castro v. Trump, et al*, Plaintiff brought a civil action against several defendants that included former President Donald John Trump and IRS Special Agent Tuan Ma.  The civil action is supported by a confirmed subpoena signed by IRS Special Agent Tuan Ma that unlawfully seized emails that were protected by the attorney-client privilege under the Texas Supreme Court's decision in *In Re Andrew Silver*,[7] which extended the attorney-client privilege to federal practitioners not licensed to practice law in the State of Texas but permitted to practice before a federal agency.  Plaintiff was an Enrolled Agent licensed to practice before the U.S. Department of Treasury.  Plaintiff was also a Paid Tax Return Preparer and Electronic Return Originator permitted to transmit tax returns to the Internal Revenue Service.  When IRS Special Agent Tuan Ma submitted the subpoena, he knowingly and falsely asserted that the communications were not protected by any privileges.  In fact, IRS Special Agent Tuan Ma knew the emails were attorney-client privileged because Plaintiff's own website thoroughly explained the law and the emails that clients had provided to him were labeled as being attorney-client privileged.  Despite knowledge that the emails were privileged, IRS Special Agent Tuan Ma provided materially false information on the subpoena in order to get access to Plaintiff's emails, which violated Plaintiff's Fourth Amendment right against unreasonable search and seizure thereby perfecting his right to initiate a *Bivens* civil action.

Additionally, Plaintiff has several tax clients that work at the Joint Defense Facility at Pine Gap ("JDFPG") who informed Plaintiff that former Director of Security of the Central Intelligence Agency and Director of Housing at JDFPG, John Turnicky, had unlawfully abused his access to government surveillance programs to conduct an unauthorized investigation into Plaintiff at the direction of the Trump White House who shared the findings with IRS Special Agent Tuan Ma.

---

[7] See 540 S.W.3d 530 (Tex. 2018).

In August 2018, Plaintiff had flown to Washington DC to meet with the DC U.S. Attorney Office's Chief of Fraud and Public Corruption, J.P. Cooney, to file a formal criminal complaint against John Turnicky for threatening to retaliate against JDFPG employees who were clients of Plaintiff. John Turnicky himself was the subject of an investigation by the Office of Inspector General as a result. The Treasury Inspector General for Tax Administration had also determined that Liz Lewis, an employee of private defense contractor Raytheon who worked at JDFPG, likely violated federal tax law, which resulted in the revocation of her Top Secret security clearance. As a result, she was escorted off the top secret facility and was never allowed to return. This drew the ire of John Turnicky who wanted to exact revenge for Plaintiff having held them accountable to the law.

Moreover, the case also alleges unlawful coordination between the Trump White House and the Internal Revenue Service in violation of 26 U.S.C. § 7217; factual allegations circumstantially supported by the mathematically impossible audits of two other outspoken critics of former President Donald John Trump: former FBI Director James Comey and former FBI Deputy Director Andrew McCabe. All of these circumstances have given rise in the media to accusations of the weaponization of the IRS to punish critics of former President Donald John Trump, including an article by Newsweek that specifically alleged that Plaintiff's recent indictment was retaliation for challenging former President Donald John Trump. The unlawful surveillance revealed Plaintiff's political activities from 2017-2020 as well as his plans in 2021 to run for President in 2023-2024 and to challenge the constitutional eligibility of former President Donald John Trump given his involvement in and provision of aid and comfort to those that attacked the United States Capitol on January 6, 2021. This was the motive for the Trump White House to make indirect contact with politically aligned individuals within the IRS Criminal Investigation Division to target Plaintiff.

As this Court is well aware, Plaintiff brought nearly two dozens federal lawsuits against

former President Donald John Trump seeking to have him declared ineligible to hold public office in the United States for violating Section 3 of the 14th Amendment; an issue that the U.S. Supreme Court has now agreed to rule upon from a similar state-level civil action brought by Citizens for Responsibility and Ethics in Washington ("CREW").

No court ever determined that the claims in *Castro v. Trump et al et al* are factually or legally baseless, intended to harass, or brought in bad faith. Moreover, the Magistrate Judge did not allege that the *Castro v. Trump et al* case was factually or legally baseless, intended to harass, or brought in bad faith. To the contrary, it is well grounded in fact and law, and the media is now paying close attention to how Plaintiff's anonymous political activities in 2017 were detected by the Trump White House and how Plaintiff's plans to run for President were uncovered by JDFPG resulting in a joint agreement amongst these parties to retaliate against Plaintiff (*i.e.*, the Bivens Conspiracy).

These are not factually baseless allegations. IRS Special Agent Tuan Ma issued a subpoena that falsely stated the emails he was seeking were not privileged. Plaintiff filed a federal criminal complaint against former Director of Security at the Central Intelligence Agency, John Turnicky, with the DC U.S. Attorney Office's Chief of Fraud and Public Corruption, J.P. Cooney. Plaintiff was advised by JDFPG employees that John Turnicky was unlawfully surveilling him. Plaintiff brought federal civil actions against former President Donald John Trump to challenge his eligibility to hold public office. Plaintiff brought a federal civil action alleging the weaponization of the Internal Revenue Service to target Plaintiff. On the same day Plaintiff is making his oral arguments in the U.S. District Court for the District of New Hampshire where Plaintiff is a ballot-placed Republican Presidential candidate, he was indicted under seal. And the day after Plaintiff files a notice in the Bivens Conspiracy case that the U.S. Court of Appeals for the D.C. Circuit rejected former President Donald John Trump's claims of presidential immunity in a separate civil

action, Plaintiff is arrested in violation of DOJ policy that expressly held that indictments should remain sealed until after the electoral process.  As a result of the criminal indictment, the *Biven Conspiracy* civil action will be stayed thus preventing Plaintiff from utilizing the discovery process to issue subpoenas to uncover evidence of coordination between the Trump White House and the IRS between 2017-2021; a convenient outcome for anyone implicated in the criminal conspiracy.

The Magistrate's reliance on this case, without any explanation or evidence of bad faith, is unwarranted.

### e. The Trump Defamation Case

All of the above now brings us to this case: *Castro v. John Doe 1* (the "Trump Defamation Case").  When the case was first filed as a John Doe case, the Court had no problem.  Plaintiff issued a subpoena to Wikimedia Foundation, Inc.  The Wikimedia Foundation refused to comply.  Plaintiff filed a miscellaneous enforcement action in the U.S. District Court of the Northern District of California.  After several motions, U.S. Magistrate Thomas S. Hixon issued his findings recommending that, for the first time in the history of Wikipedia, they should be compelled to provide identifying information of an anonymous contributor due to a *prima facie* claim of malicious defamation outlined by Plaintiff that was not protected by the First Amendment and fell outside the protections of the U.S. Supreme Court's decision in *New York Times v. Sullivan*.  To repeat, U.S. Magistrate Judge Thomas S. Hixon concluded that Plaintiff's claims of malicious defamation were and still are valid and legitimate.

In response, the John Doe cited that the Northern District of Texas had not granted leave to conduct early discovery.  As such, Plaintiff motioned for leave to conduct early discovery, which this Court expeditiously granted.  Again, no problem at all from the court.  However, once Plaintiff amended the complaint to name the other defendants in the case and it became known that the case implicated former President Donald John Trump, everything changed.  Only now is Plaintiff

13

"vexatious."

No court ever determined that the claims in *Castro v. John Doe 1 et al* are factually or legally baseless, intended to harass, or brought in bad faith. Legal conclusions couched as factual determinations without factual analysis deprive Plaintiff of fair notice and opportunity to respond. Moreover, the Magistrate Judge did not cite any evidence or specific allegations as to why or how *Castro v. John Doe 1 et al* is factually or legally baseless, intended to harass, or brought in bad faith. To the contrary, it is well grounded in fact and law, and shows a *prima facie* case for malicious defamation as another U.S. Magistrate has already concluded. Instead, all that is before the Court is the U.S. Magistrate's assertion that the mere frequency of litigation alone, without any context or case analysis, is sufficient alone to justify the sanction of labeling Plaintiff a vexatious litigant. This is not in compliance with the standard of review established by the Fifth Circuit. Standards of review are established to guard against abuse of discretion.

### f. The Sanders Case

In *Castro v. Sanders et al*, Plaintiff is challenging the constitutionality of a Texas rule that requires litigants coming out of justice courts to pay a bond equal to twice the amount of the judgment in order to have their grievances heard and redressed by regular Texas courts.

Included in the case was a claim against the Justice of the Peace under 42 U.S.C. § 1983, which Plaintiff mistakenly read to permit a claim against a judicial officer: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State… subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a ***judicial officer*** for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable." Plaintiff read the statute to mean that any person who deprives an American of their First Amendment right to petition the judiciary to redress his grievances, including a state judicial officer, can have a civil action filed against them, but that if the relief is an injunction, that state declaratory relief was unavailable or that a state declaratory judgment was violated.

Plaintiff later learned that courts had determined that state judges are not "persons" under the statute; an understandably odd interpretation that conflicts with the meaning of "every person." However, considering the separation of powers concerns, it made sense. Justice of the Peace Kenneth Sanders was dismissed as a defendant, but the case is continuing with the sole defendant being the State of Texas. To Plaintiff's knowledge, service of process has been effectuated via service on Texas Attorney General Ken Paxton, but Plaintiff could be mistaken on whether this is sufficient. Learning the intricacies of service of process on the state as a defendant is not vexatious (*i.e.*, intending to harass). Plaintiff needs time to reevaluate the Federal Rules of Civil Procedure to determine if service of process is deficient. If so, Plaintiff will correct it.

It is reasonable to conclude that a court would strike down an excessive bond that is a prerequisite to appeal as an unconstitutional burden on the First Amendment right to petition the judiciary to redress grievances.

Nevertheless, no court has determined that the claims in *Castro v. Sanders et al* are factually or legally baseless, intended to harass, or brought in bad faith. Moreover, the Magistrate Judge did not allege that the *Castro v. Sanders et al* is factually or legally baseless, intended to harass, or brought in bad faith. To the contrary, as explained above, only one of the claims was based on a good faith but erroneous interpretation of the law that Plaintiff has now thoroughly explained. The claim against the remaining defendant, State of Texas, are well grounded in fact and law.

15

### 2. Burden on the Courts or Parties

To reiterate, the U.S. Court of Appeals for the Fifth Circuit mandatorily requires that courts "must consider the circumstances of the cases" as well as these "four factors: (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions."[8]  Because Plaintiff analyzed the circumstances of the cases, history of litigation, and the good faith basis for all prior litigation above, Plaintiff now turns to the extent of any burden on the courts and other parties as a result of the civil actions.

On this requirement, the U.S. Magistrate provided no findings or analysis.  The U.S. Magistrate simply cites and quotes several cases and thereafter concludes, without analysis, that "Castro's litigation history has risen to the prevalence and level of harassment."  Harassment against whom?  Only two cases include the same defendant: *Castro v. Trump et al* and *Castro v. John Doe 1 et al*, which both list former President Donald John Trump as a defendant.  Both cases are firmly grounded in detailed fact and supporting case law.  However, at least it is now clear what this accusation of vexatiousness is truly about; it is about protecting one particular defendant from a plaintiff determined to hold him accountable to the law and the U.S. Constitution.

The U.S. Magistrate's recommendation is completely devoid of any analysis or explanation of how this civil action and others have somehow burdened this court or former President Donald John Trump.  The reason is clear: because this Court has not been burdened, and if former President Donald John Trump has been burdened, it is the result of his numerous civil and criminal infractions that have justifiably resulted in civil actions and criminal indictments.

---

[8] *See Baum v. Blue Moon Ventures*, LLC, 513 F.3d 181, 189 (5th Cir. 2008) (quoting *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 818 (4th Cir. 2004)).

The U.S. Magistrate quotes case law justifying a pre-filing injunction when a plaintiff's filings "clog the judicial machinery with meritless litigation," but the U.S. Magistrate does not explain how two cases involving former President Donald John Trump that are well-grounded in fact and supporting case law constitute "meritless litigation."  It is a conclusory statement couched as a factual determination without any factual analysis, which deprives Plaintiff of fair notice and an opportunity to adequately respond.

However, if the Court was silently taking into account Plaintiff's multistate litigation campaign against former President Donald John Trump to have him declared constitutionally ineligible to hold public office, the U.S. Magistrate's recommendation would make more sense but still fail on substance since each state in which Plaintiff filed was a separate political competition with its own distinct procedures.  Of course, the U.S. Magistrate was aware that cases outside this jurisdiction could not be relied upon as grounds for a pre-filing injunction, so it was not mentioned.

Moreover, it would appear obvious to any lay observer that 10 cases over a 6-year period (averaging about two cases per year) is hardly vexatious, especially considering the thoroughly explained basis and rationale for each case, including the fact that some of the cases substantively settled entirely in Plaintiff's favor.

The circumstances surrounding this recommendation strongly indicate that the true intent stems from the deep-seated liking of a particularly popular political figure, the favoritism for which is demonstrated in an attempt to abridge his political opponent's First Amendment right to petition the federal judiciary to redress grievances.  This has no place in our federal judiciary.  We may have differing views on what constitutes an insurrection.  We may have differing views on the future of our country.  But we should never have differing views on weaponizing the federal judiciary to silence political opposition.  That has no place in America.

17

### *3. Adequacy of Alternative Sanctions*

On this requirement, the U.S. Magistrate provided no findings or analysis.  The U.S. Magistrate merely recommends that an order be issued warning of monetary sanctions and the requirement to seek leave before being "permitted to file any additional complaints in this district."

### B. APPLICATION OF THE STANDARD OF REVIEW TO THIS CASE

As outlined above, the Fifth Circuit's standard for imposing the sanction of a pre-filing injunction as a vexatious litigant has not been met by the U.S. Magistrate's Findings and Recommendations.  The clearly articulated circumstances of each case being explained above as well as Plaintiff providing his good faith basis for each civil action negates the application of the sanction.  The U.S. Magistrate's failure to address any burden the civil actions have imposed or why alternative sanctions are inadequate also negates the application of the sanction.

Lastly, Plaintiff understands that emotions are high right now with one of the most contentious elections in U.S. History.  However, we cannot stray from our founding principles. For what has a man profited if he should gain the world but lose his own soul?  We are better than this.  To wield the power of the federal judiciary in a manner designed to silence someone with whom one politically disagrees is not the American way.  Plaintiff has been diligent in defending his reputation and asserting his rights and pursuing clarification regarding the application of Section 3 of the 14th Amendment; nothing more.  Plaintiff has been overzealous at times and failed to thoroughly understand opposing counsel's perspective and argument, but this is still a civil action; civilized action within a regulated adversarial legal system designed to promote a civilized resolution to legal disputes.  Not attacking the United States Capitol, attempting to jail political opposition, attempting to deprive political opponents of their constitutional rights to silence them, etc.  We cannot descend into that.  We must hold onto our better nature; our principles, our Christian values.

### B. Conclusion on Pre-Filing Injunction

In accordance with Fifth Circuit precedent, Plaintiff's history of factually and legally supported civil actions brought in good faith does not give rise to a finding of being a vexatious litigant warranting the imposition of a pre-filing injunction.

Nevertheless, Plaintiff takes notice of the Court's concerns. Plaintiff had already planned on entirely withdrawing from politics but recent events have pulled him back into the fray.

## II. PERSONAL JURISDICTION

Based on the U.S. Magistrate's own analysis, minimum contacts is a question of fact that must be decided on a case-by-case basis. There is no one-size-fits-all approach, so litigation that attempts to illuminate the threshold is actually beneficial to the federal judiciary and future litigants as it allows case law to develop the threshold.

### A. Standard of Review

As the U.S. Magistrate explained, the Fifth Circuit held that "[s]pecific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action."[9]

### B. Application of the Standard to This Case

Wikipedia is unquestionably an interactive website. Contributors from all over the world can edit and contribute to an article about a living person. Defendant John Doe 1 ("Chetsford") made such edits and contributions.[10] However, the webpage is edited on a daily basis and keeping track of all of the edits can be a complex task.

---

[9] *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir.2010). *Also see Herman v. Cataphora*, Inc., 730 F.3d 460, 464 (5th Cir. 2013).

[10] Although Chetsford's last edit was seemingly on Augst 4, 2023, he has continued to edit under the new alias "TaxGalPDX2." This is evident because his user page states that "TaxGalPDX2" is "the new account of TaxGalPDX. I have lost access to TaxGalPDX." https://en.wikipedia.org/wiki/User:TaxGalPDX2 However, the user page os "TaxGalPDX" states "This is the former account of "TaxGaldPDX2." https://en.wikipedia.org/wiki/User:TaxGalPDX If access was lost, how could he have updated the prior account to reference the new account?

19

In this case, as of January 23, 2024, at 2:20pm, the Wikipedia page has been edited 217 times; two of which were on January 23, 2024, alone.[11]  The webpage itself mentions Texas 38 times.  It specifically referenced Plaintiff's tax practice being located in Texas and claimed Plaintiff provided "sleazy" advice from Texas.  The article mockingly referred to Plaintiff as a Texas "perennial" candidate despite Plaintiff only having run for office twice before: in 2020 for U.S. Senate in Texas and again in 2021 in a special election for U.S. Congress in Texas.  A prior version that Chetsford drafted falsely claimed that "Several years later [Plaintiff] clarified he was never a student at the U.S. Military Academy," which is entirely fabricated and false.[12]  In another prior version, Chestford maliciously and falsely claimed that Plaintiff "has never served in the U.S. Armed Forces."[13]  Chetsford also suggested Plaintiff has not a Republican because he raised "money through ActBlue," which Chetsford later removed on August 4, 2023, when he claimed he confused "John Anthony" with "Jaoquin."[14]  Chetsford also contributed all of the 2004 election results from Webb County, Texas, which other contributors criticized as irrelevant since Plaintiff was 20 years old at the time.  Chestford added this because Plaintiff had run as a Democrat in a city (Laredo, Texas) and county (Webb Count, Texas) that was 98% Democrat.  Chetsford used this, coupled with the false accusation that Plaintiff raised money via ActBlue, to suggest that Plaintiff has a Texas Democrat plant pretending to be a Texas Republican.

Defendant Chetsford knew exactly what he was doing.  The article was about Plaintiff's Texas tax practice, centered around the Texas activities of a Texas resident whose career is based in Texas.  The actual harm (Plaintiff's emotional distress and the injury to his professional reputation) was suffered in Texas.  Texas was the focal point of the article and the location of the

---

[11] https://en.wikipedia.org/w/index.php?title=John_Anthony_Castro&action=history&limit=500
[12] https://en.wikipedia.org/w/index.php?title=John_Anthony_Castro&oldid=1149912185
[13] https://en.wikipedia.org/w/index.php?title=John_Anthony_Castro&oldid=1146617307
[14] https://en.wikipedia.org/w/index.php?title=John_Anthony_Castro&oldid=1168749411

resulting harm.  Chetsford's malicious and defamatory statements were directed to Texas.  None of the statements in the Wikipedia article focus on activities and events outside of Texas.  They solely concerned activity in Texas.  Taken as a whole, Chetsford knew he was targeting a Texas resident and slandering his activities in Texas.  No reasonable person could conclude that Chestford was unaware that this could result in him being subject to a civil action in Texas.  And the same applies to the other defendants who collectively hired Chetsford.  They knew they were going to try to destroy the reputation of a Texas resident by maliciously defaming his Texas activities.  All of this manifested an intent to target and focus on Texas.

### III. FAILURE TO TIMELY SERVE

This Court previously granted leave to conduct early discovery for the stated purpose of identifying Defendant Chetsford.  The miscellaneous enforcement action in the U.S. District Court for the Northern District of California is still pending.  Plaintiff has no power to command that Court to expedite its decision.  In fact, appellate courts will not grant mandamus on usurpation of judicial power for failure to rule until at least one full year has passed; however, Plaintiff will again motion for extended time to serve process.

With regard to Defendant Donald John Trump, he is not currently in Florida and has objected to service of process on his staff in other cases.  Plaintiff is still researching alternative methods of service of process on how to properly serve him to in compliance with the Federal Rules of Civil Procedure.  Serving a transient individual running for President is easier said than done, especially considering that Secret Service will not permit anyone to get near him and will not6 accept service of process on his behalf.

In other words, there are valid and legitimate reasons why these two defendants have not yet been served.  Plaintiff hereby motions the Court to extend time to effectuate service of process.

## REQUESTED RELIEF

Based on the foregoing, Plaintiff requests the Court extend the time to service Defendant Donald John Trump and Defendant Chetsford, reject the recommendation of a pre-filing injunction, and find that the Court has specific jurisdiction based on the arguments above.

Dated: January 23, 2024.

Respectfully submitted,

By: /s/ *John Anthony Castro*
John Anthony Castro
12 Park Place
Mansfield, TX  76063
(202) 594 – 4344
J.Castro@JohnCastro.com
**Plaintiff *Pro Se***

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I John Anthony Castro, verify under penalty of perjury, that the all of the statements of fact and law herein are true and correct.

Executed on January 23, 2024.

/s/ John Anthony Castro
John Anthony Castro

## CERTIFICATE OF SERVICE

On January 23, 2024, I submitted the foregoing document with the Clerk of this Court either by mail, email, or CM/ECF.  It is further certified that all other parties are registered CM/ECF users and will be served via that system.

*/s/ John Anthony Castro*
John Anthony Castro